IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 2:06-cr-00387 |
| v. | ) |
| | ) Judge Mark R. Hornak |
| JAMES MONYA CARTER, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is Defendant James Monya Carter's January 27, 2014 Motion to Terminate Probation, ECF No. 79. The Court has considered the Defendant's Motion, the United States of America's Response in Opposition to Motion for Early Termination of Supervised Release, ECF No. 80, the Defendant's Response to Government Opposition to Motion for Early Termination of Supervised Release, ECF No. 81, and the matters placed on the record at a hearing held on March 26, 2014, in which the Defendant participated and testified. For the reasons that follow, this Court denies the Defendant's Motion, without prejudice.

## I. BACKGROUND

On or about December 19, 2006, Mr. Carter was arraigned on an indictment alleging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(C). On December 17, 2007, Mr. Carter pled guilty, consistent with the terms of a written plea agreement, to the first count of that three-count indictment, *i.e.*, knowingly and intentionally distributing five grams or more of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The Court sentenced Mr. Carter to 70 months of

imprisonment with five years of supervised release.[1] At the time of Mr. Carter's Motion to Terminate Probation, Mr. Carter had completed two and a half years of supervised release.

Mr. Carter resides in Monessen, Pennsylvania with his fiancée and his son. For the first six months after his release, Mr. Carter worked at various jobs ranging from selling watches to doing maintenance. Then, Mr. Carter apprenticed with Alan Koury of "Koury's Buy Sell Trade." During this apprenticeship, Mr. Carter applied for and received a state license to sell precious metals, and currently operates his own resale shop, "Glassport Buy Sell Trade."

## II. DISCUSSION

The crux of Mr. Carter's Motion to Terminate Probation is that he has "complied with all terms and conditions of his probation that include but are not limited to drug testing, home inspections, employment confirmation, and in person reporting," he "has not been convicted of any attributable charges nor has he been detained resulting from infractions of supervision conditions," and that his Probation Officer has no objection to his Motion. Def.'s Mot. to Terminate Probation ("Def.'s Mot.") at 2.

The Government acknowledges that it "has no information or evidence to contradict Carter's averments that he has complied with the conditions of his release." Resp. in Opp'n to Mot. for Early Termination of Supervised Release ("Resp. in Opp'n") at 1. However, the Government opposes the early termination of Mr. Carter's supervised release for three principal reasons. *Id.* First, because the conditions of Mr. Carter's supervision are not onerous – he is required to maintain gainful employment, report as directed, and refrain from engaging in unlawful conduct. *Id.* Second, because although Mr. Carter is to be commended for his reentry into society, the fact that he has complied with the conditions of his supervision is alone insufficient to warrant early termination of that supervision. *Id.* at 2. And third, it is the

---

[1] The sentencing judge was the late Chief Judge Gary L. Lancaster.

2

Government's position that Mr. Carter's successful compliance with the conditions of his supervision is partially attributable to the fact that he faces incarceration if he violates the conditions of his release. *Id.*

Section 3583(e) of Title 18 provides that a sentencing court may terminate a term of supervised release prior to its expiration if the defendant has served at least one year of his supervised release term [which Mr. Carter has done] and the sentencing court determines, after considering the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7), that "such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Regarding the sentencing court's discretion under this latter requirement, it has been observed that "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it." *U.S. v. Laine*, 404 Fed. Appx. 571, 574-75 (3d Cir. 2010); *United States v. Kay*, 283 Fed. Appx. 944, 946 (3d Cir. 2008); *United States v. Abdelhady*, 2013 WL 1703775, at *1 (W.D. Pa. 2013).[2]

This "extraordinary" or "exceptional" standard appears to this Court to be a tree that has grown from its own seeds and has seemingly now become a "gatekeeping" test used by a number of district courts in this Circuit, although not adopted as such by our Court of Appeals. In *Kay*, our Court of Appeals approved of the use of this standard, but specifically noted that it was *not* determining whether the "extraordinary" or "exceptional" standard was *the* controlling standard when it held that the district court did not abuse its discretion in denying modification using a "changed circumstances" standard. *Kay*, 283 Fed. Appx. at 946. In *Laine*, discussion of the

---

[2] Any "extraordinary circumstances" requirement (and limitation on the Court's discretion) is, of course, not contained in the applicable statutory language. *See* 18 U.S.C. § 3583(e)(1). The only specific limitation contained in that provision is the completion of at least one year of supervised release.

3

"extraordinary" or "exceptional" standard appears to be only *dicta*, given that our Court of Appeals in *Laine* enforced an appellate waiver barring the defendant's efforts to reduce his term of supervision. *Laine*, 404 Fed. Appx. at 573.[3]

An examination of the test's genealogy shows that its heritage is traced to the Second Circuit's decision in *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997). In exercising their discretion in addressing such motions, a number of district courts in this Circuit have noted our Court of Appeals' above-mentioned approving nods to an interpretation of the "*Lussier*" standard, and have then applied it as a "red light/green light" test. *See, e.g., United States v. Abdelhady*, 2013 WL 1703775 (W.D. Pa. 2013); *United States v. Dudash*, 2012 WL 874878 (W.D. Pa. 2012); *United States v. Cudemo*, 2010 WL 762310 (E.D. Pa. 2010); *United States v. Antico*, 2008 WL 2973033 (E.D. Pa. 2008). However, the focus in *Lussier* was on "changed circumstances," one type of which could be "exceptional" or "extraordinary" events. *Lussier*, 104 F.3d at 36.[4] Thus, this Court does not conclude that its discretion is constrained to only those situations that are "extraordinary" or "exceptional."[5] In both literal and practical terms, 18

---

[3] The Court's research has not identified any post-*Kay* decision in which our Court of Appeals has formally adopted an "exceptional" or "extraordinary" standard. Rather, since *Kay*, our Court of Appeals has analyzed a defendant's appeal of a district court's denial of his motion to terminate supervised release by reviewing the district court's decision through the lens of the provisions of § 3583(e)(1), without applying the "exceptional" or "extraordinary" standard that was mentioned in *dicta* in *Laine*. *See, e.g., United States v. Danzey*, 356 Fed. Appx. 569, 570-71 (3d Cir. 2009); *but see United States v. Abuhouran*, 398 Fed. Appx. 712, 714-715 (3d Cir. 2010) (noting, while applying the statutory standard, that the defendant had not presented anything "exceptional").

[4] To make this test's heritage even more attenuated, the "changed circumstances" language in *Lussier* is also *dicta* because the sole issue in *Lussier* was whether § 3583(e) permitted modification of an illegal term of supervised release. *Lussier*, 104 F.3d at 33-34. The Second Circuit held that it did not, given its focus on the § 3553(a) standards, and that such relief could only be sought under Federal Rule of Criminal Procedure 35(c) and 28 U.S.C. § 2255. *Id.* at 34-37.

[5] There are pragmatic problems with the invocation of an "exceptional" or "extraordinary" test as a threshold to relief under §3583(e). The former term means "forming an exception; rare," and the latter, "going beyond what is usual, regular, or customary" and "exceptional to a very marked extent." Merriam-Webster's Collegiate Dictionary 435, 444 (11th ed. 2011). These definitions beg the question, "compared to what?" The United States contends, with some legitimacy, that performance on supervised release should be compared to what is expected, namely full compliance with all conditions of supervision, and that such compliance is insufficient to support a modification. But if what is properly expected is 100% compliance, then what is "exceptional to a very marked extent"? How can

U.S.C. § 3583(e) authorizes what is in essence a limited form of sentence modification to be guided by its specific statutory provisions, and this Court approaches Mr. Carter's Motion in that vein.[6]

In determining whether to terminate supervised release, 18 U.S.C. § 3553(a) provides the following factors for the sentencing court to consider:

> (1)The nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Laine*, 404 Fed. Appx. at 572, n. 2 (citing 18 U.S.C. § 3553(a)(1), (2)(B)-(D), (4)-(7)); 18 U.S.C. § 3583(e)(1)). Ultimately, the decision to terminate a term of supervised release rests in the sound discretion of the court. *Burkey v. Marberry*, 556 F.3d 142, 149 (3d Cir. 2009).

---

a supervisee comply at say, 133% or 200%? Further, experience teaches that what Mr. Carter has done here is likely well beyond what is "usual, regular, or customary" for those on supervision generally, or perhaps for those of his age, education, offense characteristics, and the like. Whose performance should Mr. Carter's be compared to? That of all defendants? That of those of substantially similar offenses, age, geography? The likely necessity for all sorts of data-based empirical comparisons in each case is made plain by those questions. While this Court recognizes that our Court of Appeals permits the application of such a test, it does not appear that it has yet compelled it. For the reasons noted, this Court concludes that an analysis that hews to the statutory requirements is the better course.

  The Court also notes the recent decision in *United States v. Moore*, No. 01-145, 2014 WL 1765978 (W.D. Pa. May 2, 2014), in which the *Moore* Court acknowledged that in our Circuit, the "exceptional or extraordinary circumstances" test is not mandated by Circuit precedent, but is a permissive mode of analysis, the use of which is supported by several non-precedential decisions of the court of appeals. *Id.* at *2-3. The *Moore* Court then applied that test in denying the petition for modification. *Id.* at *5. While respecting the reasoning and analysis of the Court in *Moore,* this Court concludes that based on the textual choices of Congress in crafting §§ 3583(e)(1) and 3553(a), and the pragmatic concerns noted above, it should not apply the "exceptional or extraordinary circumstances" test as a gatekeeping standard in this or similar cases, at least not until directed to do so by either our Court of Appeals or the Supreme Court, or by statute.

[6] In taking this approach, the Court would note that *Lussier*'s invocation of a "changed circumstances" rubric also makes sense under the statute. If the sentence is presumptively correct (as demonstrated by the fact that it remains in force), then presumably it is a sentence that is "sufficient, but not greater than necessary." *See* 18 U.S.C. § 3553(a). To justify a "new" sentence via a modification of the term of supervision, presumably something must have changed to make the imposed sentence more than "sufficient," and "greater than necessary."

5

Here, most pertinent to this Court's analysis are factors (1), (2), and (4). Turning to the first factor enumerated above, Mr. Carter, as the Government points out, was an established cocaine and crack dealer when he was indicted as part of an anti-drug trafficking initiative in the mid-Mon Valley region of the Western District of Pennsylvania. Resp. in Opp'n at 3. Mr. Carter also had numerous juvenile adjudications and adult convictions. *See* Presentence Investigation Report ("PIR") at 6-8. Contrary to Mr. Carter's representation that he "could not fully appreciate the criminality of his conduct" at the time of his federal offense, it appears that Mr. Carter did have ample opportunity to reflect on such criminality during his juvenile adjudications and adult convictions that occurred prior to the federal offense for which he is now on supervised release. Mr. Carter was intricately involved in the serious criminal activity to which he pled guilty and, accordingly, Mr. Carter's sentence accounts for the factors set forth in § 3553(a), including the nature and circumstances of the offense, the need for effective deterrence, and the sentencing range typically established for such crimes. *See* 18 U.S.C. § 3553(a).

As for the second factor, Mr. Carter in effect points to the lack of a need to deter him from future criminal conduct by averring that he has successfully completed two and a half years of a five year term of supervised release, during which time he has maintained gainful employment; apprenticed with Alan Koury of Koury's Buy Sell Trade; opened his own business after obtaining the required state licensure to sell precious metals; and has complied with all terms and conditions of his probation that include, but are not limited to, drug testing, home inspections, employment confirmation, and in-person reporting. Def.'s Mot. at 1-2.[7]

---

[7] At the hearing, Mr. Carter's Probation Officer stated his support for Mr. Carter's position. Among other additional reported facts favorable to Mr. Carter is that while incarcerated in a federal prison at a young age, he attained the maximum level of federal prison "good time" credits, coupled with a clean prison disciplinary record.

6

In support of his Motion, Mr. Carter has filed a letter of recommendation from Mr. Koury, a copy of Mr. Carter's License to Sell Precious Metals, *see* ECF No. 79, Exs. A, B, and a letter of recommendation from the Mayor of Monessen, Louis Mavrakis, *see* ECF No. 83, Ex. A. Mr. Koury writes that he has known Mr. Carter for around two years and Mr. Carter exhibits "outstanding workmanship," "a great business character," and "has a bright and limitless future with his store and his family." *See* ECF No. 79, Ex. A. Mayor Mavrakis writes that Mr. Carter has shown "great strength" as a business owner in Monessen, spends time working in the community at local food banks, and works with local youth programs. *See* ECF No. 83, Ex. A.

Mr. Carter presents solid evidence of his commendable business acumen, initiative, and community service, but his release has not been wholly event-free. On September 5, 2012, Mr. Carter was charged by the Monongahela Police Department with simple assault, harassment, and disorderly conduct, arising from an incident that took place on August 26, 2012 and which triggered Mr. Carter's alleged noncompliance with the condition of his supervised release "to not commit another federal, state, or local crime." *See* ECF Nos. 77, 78.

While Mr. Carter subsequently pled to a charge of disorderly conduct, a summary offense for which he only paid a fine, it is uncontested that Mr. Carter's supervised release has not been without an incident triggering law enforcement intervention. Further, this Court cannot conclude that Mr. Carter's successful compliance with the conditions of his supervision is not to some degree attributable to the reality that Mr. Carter faces incarceration if he violates his probation, nor can this Court conclude that Mr. Carter would not continue to benefit from the supervised release component of his sentence, which imposes conditions that in essence only amount to maintaining gainful employment, reporting as directed, and forgoing unlawful conduct – all of

7

which, as Mr. Carter testified at the March 26, 2014 hearing, do not interfere with the successful operation of his business.[8]

In *Laine*, our Court of Appeals acknowledged (but did not impose) the "exceptional" or "extraordinary" circumstances standard when it discussed and upheld the district court's denial of the defendant's motion to terminate his supervised release, concluding that even if the defendant had recently been ordained a priest and wanted to establish a monastery in 14 western states, there was nothing exceptional or unusual about the defendant having been compliant with the terms of his supervised release. *Laine*, 404 Fed. Appx. at 572, 573-74; *see also United States v. Cudemo*, 2010 WL 762310, *1-2 (E.D. Pa. 2010) (denying early termination of supervised release where defendant had complied with all terms of his release and had purportedly "turned his life around"). This Court commends Mr. Carter for his diligence in adhering to the conditions of his probation, his commitment to his family, and his current ability to channel his entrepreneurial spirit towards lawful business endeavors. At the same time, Mr. Carter also has cited to no fundamental change in the § 3553(a) sentencing analysis supporting, at this point, early termination of the supervised release term imposed at sentencing.

Finally, in support of the fourth factor for this Court to consider in its analysis, Mr. Carter cites to the United States Sentencing Commission's May 2004 Report, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," for the proposition that "recidivism rates decline relatively consistently as age increases," and contends that he has matured and is "now self-driven with a lawful profession as an outlet for his desires to succeed while taking serious[ly] the responsibilities of fatherhood." Def.'s Resp. at 4. Mr. Carter has a

---

[8] In response to a question from the Court at the Motion Hearing, counsel for Mr. Carter stated that there was no external factor or issue that made it particularly important to terminate supervision at this time. He did note that Mr. Carter would need to travel out-of-state to deal with business expansion matters, but relief from the travel limitations in his conditions of supervision may be granted by his Probation Officer, or this Court, on an "as needed" basis.

lot going for him. He is a responsible and caring father who recently faced the challenges of his youngest child's very premature birth. He has complied with the conditions of his supervision. He started and runs a successful small business. He plans to soon marry, and has, since his release from prison, seemingly "done his duty."

This Court is faced with highly laudable conduct, post-release, by Mr. Carter. However, in this Court's judgment, given all of the matters set forth above, Mr. Carter's conduct is not conduct of a level that constitutes the requisite measurable change in the facts involved in the sentencing calculus under § 3553, no matter how classified. Put another way, this Court is not yet faced with facts that demonstrate, as a sentencing matter, that Mr. Carter's originally-imposed term of supervision has become plainly unnecessary or improvident due to intervening events, such that it would now constitute a sentence that has gone beyond "sufficient" to become one that is "greater than necessary," as that limitation is used in 18 U.S.C. § 3553(a).[9]

---

[9] This Court notes that Mr. Carter's plea agreement provides that Mr. Carter "waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." Plea Agreement, ECF No. 50, at 2. What the Court of Appeals did recognize in both *Laine* and in a post-*Laine* precedential opinion is that to the extent a motion for early termination of supervised release affects the length of a defendant's overall sentence, it is possible that a defendant who has executed a waiver like Mr. Carter's may in fact have waived the right to file a motion for early termination of supervised release. *See Wilson*, 707 F.3d 412, 414-15 (3d Cir. 2013) (recognizing that the duration, as well as the conditions of supervised release, are components of a sentence, and that by the defendant's waiver of his right to take a direct appeal of his sentence, the defendant waived his right to challenge the conditions of his supervised release, which were by definition part of his sentence) (citing *United States v. Goodson*, 544 F.3d 529, 533-37 (3d Cir. 2008)); *see also Dudash*, 2012 WL 874878, at *8; *Laine*, 404 Fed. Appx. at 573 (by waiving his right to a direct appeal, Laine waived his right to challenge the duration of his term of supervised release). For the reasons noted above, this Court need not reach on this issue (which was not briefed by the parties), and concludes that irrespective of such a potential waiver, the proper course is to deny Mr. Carter's Motion without prejudice.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that early termination of Mr. Carter's term of supervised release is not warranted at this time, and therefore, Mr. Carter's Motion to Terminate Probation is denied. The Court nonetheless notes Mr. Carter's commitment to providing for his family, his commitment to providing a lawful outlet for his entrepreneurial spirit, and his commitment to giving back to his community by speaking to youths about refraining from a career in crime. Mr. Carter's Motion is denied without prejudice to its reassertion at a later date, if circumstances so warrant.

_____
Mark R. Hornak
United States District Judge

Dated: May 19, 2014
cc: All counsel of record